UNITED STATES *v.* MALHAME & Co. (No. 4001)[1]
MALHAME & Co. *v.* UNITED STATES (No. 4005)

[1] T. D. 48911.

United States Court of Customs and Patent Appeals, January 25, 1937

*Joseph R. Jackson,* Assistant Attorney General (*John F. Kavanagh,* special attorney, of counsel), for the United States.
*Sharretts & Hillis (Edward P. Sharretts* of counsel) for Malhame & Co.

[Oral argument December 8, 1936, by Mr. Kavanagh and Mr. Sharretts]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

These are cross appeals in a reappraisement proceeding involving certain cloth-bound and leather-bound prayer books printed in English, imported from Belgium by Malhame & Co. (hereinafter referred to as the importer), it being the sole agent in the United States of the manufacturer. The books were appraised by the local appraiser on the basis of their United States value.

The importer appealed to reappraisement, and upon the trial before the single judge claimed that there was an export value of the books based upon the export value of similar books produced by other manufacturers and exported to the United States. It was conceded that the books had no foreign value.

Much testimony was taken and many exhibits were introduced in evidence, including an affidavit introduced by the importer bearing upon the cost of production of the leather-bound books, which affidavit was marked Exhibit 22.

The trial judge denied a motion of the Government to dismiss the importer's appeal, which motion was based "on the ground no evidence has been offered to offset the value returned by the appraiser."

The trial court sustained the value found by the local appraiser with respect to the cloth-bound books, and as to the leather-bound books he held that there was no foreign, export, or United States value of the same, and that the importer had established the cost of their production; he found such cost to be represented by the invoice values, "the separate percentages thereof representing the cost of producing the bindings and the texts, respectively, covered by the particular items * * *, being enumerated in the annexed schedule which is marked 'A' and made part of this decision", and that "Such costs constitute the dutiable values of said leather-bound prayer books, and I so hold."

Judgment was entered with respect to the leather-bound books, and also with respect to the cloth-bound books, in accordance with the decision respecting them.

The importer appealed to the appellate division of the Customs Court from said judgment insofar as it related to the cloth-bound books, and the Government appealed insofar as the judgment related to the leather-bound books.

Before the First Division of the Customs Court the importer contended that the trial court erred in not holding that an export value of the cloth-bound books had been established by the evidence. The Government in its appeal assigned many errors, chief of which were that the trial court erred in overruling the motion of the Government to dismiss the appeal of the importer to reappraisement under the rule of *res adjudicata;* that no weight should be given to said Exhibit 22; that the books should have been appraised as entireties; that no evidence had been introduced overcoming the presumption of the correctness of the appraisement made by the local appraiser; and that such appraised value should have been affirmed.

The appellate division affirmed the judgment of the trial court in all respects, holding that there was neither a foreign nor an export value of the cloth-bound books, and that, applying the rule laid down by us in the case of *United States* v. *Wanamaker,* 20 C. C. P. A. (Customs) 381, T. D. 46185, there was no foreign, export, or United States value of the leather-bound books; that the affidavit, Exhibit 22, established the cost of their production as found by the trial court, and also that the trial court properly overruled the Government's motion to dismiss the importer's appeal to reappraisement.

Judgment was entered accordingly, and as hereinbefore noted both parties have appealed to this court, the importer contending that the appellate division erred in not finding an export value of the cloth-bound books, and the Government contending that the division erred

in not dismissing importer's appeal to reappraisement, and further assigning a large number of errors with respect to the decision of the appellate court insofar as it relates to the leather-bound books.

We will first consider the Government's appeal. It is the contention of the Government that importer's appeal to reappraisement should have been dismissed because it involves only so-called duress entries, made under the provisions of section 503 (b) of the Tariff Act of 1930, and the test case upon which the entries were based was decided by this court adversely to the importer, in the case of *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276.

In support of this contention the Government relies upon a number of decisions of this court rendered prior to the enactment by Congress of Joint Resolution No. 336, approved July 12, 1932, T. D. 45805.

These cases so relied upon, of which the case of *Innis, Speiden & Co. et al.* v. *United States*, 19 C. C. P. A. (Customs) 1, T. D. 44789, is an illustration, held that a duress entry under section 489 of the Tariff Act of 1922, the predecessor of section 503 (b) of the Tariff Act of 1930, could not be validly appraised until after final appraisement in the test case cited in the duress certificate, and if the test case was won in whole or in part by the importer, the collector should liquidate the duress cases in accordance with the final appraisement in the test case.

Said joint resolution reads as follows:

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled*, That it was and is the true intent and meaning of section 503 (b) of the Act entitled "An Act to provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, to protect American labor, and for other purposes", approved June 17, 1930, and of the concluding provision of section 489 of the Act entitled "An Act to provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, and for other purposes", approved September 21, 1922, that imported merchandise entered in accordance with the provisions of said section 503 (b) and the concluding provisions of said section 489 shall be appraised and reappraised in the same manner as though the merchandise was not so entered; that the appraisement and reappraisement of such merchandise shall have the same force and effect as in the case of merchandise not so entered; and that entries covered by certification of the importer as provided in said section 503 (b) and the concluding provision of said section 489 shall be liquidated in accordance with the final appraised value of the merchandise covered by such certificates.

With respect to this joint resolution, in the case of *United States* v. *F. W. Woolworth Co. et al.*, 22 C. C. P. A. (Customs) 184, T. D. 47126, we said:

Reference should also be made to the cases of *Innis, Speiden & Co., supra*, and *Friedlaender & Co., supra*, where this court held that appeals from illegal appraisements should be dismissed by the trial court. Those cases involved duress entries and our decisions therein resulted in the passage by Congress of the public resolution (H. J. Res. 336), alluded to by the division as heretofore recited in this opinion.

Those cases, insofar as they dealt with duress entries, are no longer to be regarded as precedents, and the same is true of such parts of our decision in the case of *United States* v. *F. S. Allenby & Co. et al.*, 20 C. C. P. A. (Customs) 80, T. D. 45703, as deal with duress entries.

It is further the Government's contention that, inasmuch as the test case was decided adversely to the importer, it is bound by its entered value of the merchandise, and the importer could gain no benefits by a reappraisement. The Government takes the position that under said joint resolution the entries here involved must be liquidated on the final appraised value of the merchandise covered by the test case.

As to whether or not the importer may gain any benefits from a reappraisement of the involved merchandise is of no concern to us here. The joint resolution plainly provides that the merchandise "shall be appraised and reappraised in the same manner as though the merchandise was not so entered", that is, entered as a duress entry. Furthermore, what the duty of the collector may be under said joint resolution, or the construction that it should receive with respect to the liquidation of duress entries, is not involved in this appeal, which is a reappraisement proceeding.

For the reasons stated, the cases relied upon by the Government have, in view of said joint resolution, no application to the case at bar, and the motion of the Government to dismiss the importer's appeal was properly denied.

With respect to the finding of value of the leather-bound books it appears that, following our decision in the case of *United States* v. *Wanamaker*, *supra*, the lower tribunals held that the texts and bindings should, under the provisions of paragraph 1410 of the Tariff Act of 1930, be separately appraised; that there was no foreign, export, or United States value for the leather bindings or the pages of the text in the imported condition, and therefore these should be appraised upon the basis of the cost of production of binding and text, considered separately.

The Government assigns error upon the point of separate appraisal of binding and text, and also with respect to the court's findings as to cost of production.

We will first consider the question of whether there is any substantial evidence in the record of the cost of production of the leather-bound books. The only evidence upon this point consists of the affidavit introduced in evidence as Exhibit 22, which, omitting certain schedules therein contained, reads as follows:

Before me, William D. Moreland, Jr., vice Consul of the United States of America, in and for the Consular District of Antwerp, Belgium, duly commissioned and qualified, personally appeared Joseph H. Proost, who, being duly sworn, deposes and says:

I hold the position of co-director in Henri Proost & Cie of Turnhout, Belgium. I am personally familiar with all of the prayer books sold by my company to Malhame & Co. of New York City and shipped to said purchaser during the years 1930, 1931, 1932, 1933, 1934, and 1935 to date. I am personally familiar with the invoice descriptions of the books shipped to Malhame & Co. by my company during the periods stated. All of the books specified in the schedule herein and shipped to Malhame & Co. by my company were manufactured by my company. I am personally familiar with the manufacture of the books in question and with all costs incident to their manufacture, including the cost of materials, fabrication, manipulation, and other processes employed in their manufacture and the usual general expenses and profits.

I have made herein below a schedule of the different leather bound books shipped by my company to Malhame & Co. during the years above specified. I have indicated each description by the text number and binding number as they appear on the consular invoices. In the case of each description the purchase price specified in the consular invoices during the years above stated was the total of the cost of materials and fabrication, manipulation, or other processes employed in manufacturing plus general expenses of over ten percent of such cost plus a profit of more than eight percent of the sum of the cost above specified. To the best of my knowledge and belief the profit added to make our selling price is at least equal to the profit which ordinarily is added in the case of books of the same general character as the books sold by my company by other manufacturers in Belgium.

In the case of each description specified below by text number and binding number I have given the percentage of the total cost of production which went into the manufacture of the leather binding and the percentage of such cost which went into the text. Thus in the case of text number 1580 binding number 403, specified in the schedule below, the leather binding represents 52 percent of the cost of production of the book and the text represents 48 percent. At no time during the years above specified was the leather binding of any of the books herein referred to sold or offered for sale in Belgium or for export to the United States or other countries separate from the text, nor was the text sold or offered for sale separate from the binding. To the best of deponent's knowledge and belief no other manufacturer or dealer was either selling or offering for sale during the period in question leather bindings of this character separate from the text or the text separate from the bindings.

The only matter contained in the omitted schedules which bears upon the cost of production is the percentage cost of text and percentage cost of binding, without any further itemization of the same.

Section 402 (f) of the Tariff Act of 1930 reads as follows:

SEC. 402. VALUE.

\* \* \* \* \* \* \*

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

It will be observed that there is nothing in said affidavit separately showing items (1), (2), (3), and (4) of said section 402 (f).

In the case of *Snow* v. *United States*, 24 C. C. P. A. (Customs) 319, T. D. 48767, we affirmed a judgment of the Customs Court based upon its decision that, in order to comply with said section, each of the items (1), (2), (3), and (4) must be separately shown, and that, unless so shown, the importer's appeal to reappraisement may properly be dismissed.

Therefore, without repeating here our discussion in that case, we will say only that our decision therein is controlling here, and the appellate division in the case at bar erred in holding that the cost of production of the leather-bound books had been established by the importer, because there is no substantial evidence in the record tending to establish, in the manner provided by law, such cost of production.

It follows from the foregoing that the judgment appealed from, insofar as it relates to the leather-bound books, must be reversed, and it is not necessary to consider other assignments of error by the Government with respect to such books.

The appeal by the importer involves the reappraisement of the cloth-bound prayer books.

The importer assigns error on the part of the appellate division in affirming the judgment of the trial judge finding a United States value for such books, and that such value was represented by their appraised value.

It is importer's contention that the record establishes an export value for the cloth-bound books. As a basis for this contention the importer introduced evidence to the effect that there are two other Belgian manufacturers selling prayer books for export to the United States. The importer claims that the evidence shows, with respect to such books, that some are precisely similar to those here involved, others vary somewhat in text, binding, etc., but that generally the range of prayer books is very much the same in the case of the different publishers. The importer also introduced evidence as to the prices at which such allegedly similar goods were sold for export to the United States.

It is conceded that the importer is the exclusive agent in the United States of the Belgian manufacturer of the books here involved, and

that such manufacturer will sell its books for export to the United States only through Malhame & Co., the importer herein, except that in the contract between the Belgian manufacturer and the importer one other firm in the United States was given the privilege of buying prayer books direct from such manufacturer.

It also appears from the record that the books which importer claims are similar to the books here involved are sold by the manufacturers thereof for export to the United States only through their exclusive agents in the United States. The importer apparently concedes that the sales to it by the Belgian manufacturer of the books here involved are restricted sales, because all purchasers in the United States, with the exception above noted, must purchase through the importer, and that the involved books are not freely offered to all purchasers in Belgium in the ordinary course of trade for export to the United States. It is clear to us that the sales by the other manufacturers in Belgium of claimed similar books for export to the United States are exactly of the same character. We quote from importer's brief as follows:

\* \* \* Proost & Co. [the manufacturer of the books here involved] sells its books for exportation to the United States through Malhame & Co. Brepols sells his books for exportation to the United States through Fritz Wildermann (R. 30, 31). Splechel sells his books for exportation to the United States through A. G. Beetar Corporation (R. 147, 148). The manufacturers all issue price lists (R. 176, 178). Obviously anyone wishing to buy usual wholesale quantities of books for exportation to the United States may do so through the agents of either of the above manufacturers or he may go to some other manufacturer and have the books duplicated. \* \* \*

Of course the fact, if it be a fact, that a purchaser of prayer books for exportation to the United States "may go to some other manufacturer and have the books duplicated" is irrelevant to the issue here, for there is nothing in the record to indicate what the prices of the books in such case would be. Moreover the statute is not complied with, even had it been shown that this could have been done and what the prices would have been. The books, in order to have an export value, must have been freely offered to all purchasers in the principal markets of Belgium in the ordinary course of trade at the time of the exportation to the United States of the books here involved. Neither do we think that, where three manufacturers restrict their sales to certain individuals or firms, it can be claimed that such is the ordinary course of trade in the principal markets of Belgium.

It therefore appears from the evidence that there was no free offering of such or similar books as those here involved to all purchasers in the principal markets of Belgium for export to the United States. The most that can be said is that there was an offering to three exclusive agents of three different manufacturers of prayer books, but this is far from a free offering to *all* purchasers. It definitely appears

from the evidence that, if it was desired to purchase prayer books in English in Belgium for export to the United States by a would-be purchaser other than the exclusive agents of the manufacturers, such purchaser would be referred to the exclusive agents of the manufacturers in the United States and no sales would be made except through such agents, with one exception hereinbefore noted. The mere fact that there was competition between Belgian manufacturers in the sale of prayer books for export to the United States cannot affect the question before us, for it appears that none of them freely offered the same to all purchasers in the principal markets of Belgium as is required by section 402 (d) of the Tariff Act of 1930 in order to establish export value.

We therefore find that the appellate division committed no error in affirming the judgment of the trial judge insofar as the cloth-bound prayer books are concerned, even assuming that the books manufactured by the other two Belgian producers were similar to those here involved, which question we do not find it necessary to determine.

For the reasons stated, the judgment appealed from is *affirmed* insofar as it relates to cloth-bound prayer books, is *reversed* insofar as it relates to leather-bound prayer books, and the cause is *remanded* to the Customs Court for further proceedings consistent with the views herein expressed.